**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

CARLOS GARCIA,

    Plaintiff,

           v.

SIMPLE FACTORY, ET AL.,

    Defendants.

**Civil No. 13-1056 (SEC)**

**OPINION AND ORDER**

Before the Court are the defendants' renewed motions to dismiss based on a forum-selection clause, Dockets ## 46 & 47, and the plaintiff's opposition thereto. Docket # 49. Also pending is the plaintiff's motion for reconsideration of the order dismissing, for want of service of process, his claims against codefendant José Raúl Rodríguez. Docket # 45. After reviewing the filings and the applicable law, the plaintiff's motion for reconsideration is **DENIED**, and the defendants' motions are **GRANTED**. But their request to dismiss the securities fraud claim is **HELD IN ABEYANCE**.

**Factual and Procedural Background**

Carlos García, a Florida resident, brings this diversity action under the Puerto Rico General Corporations Act, P.R. Laws Ann. tit. 14, §§ 3501-4066, seeking "to enforce his rights as a shareholder," Docket # 1, ¶ 11, of codefendant Simple Factory, a closely held Puerto Rican corporation and shareholder company of Social Media, LLC, which operates an online commerce marketplace (Gustazos) that connects merchants to consumers by offering discounted goods and services. Id. at ¶¶ 6, 14-16. Invoking federal-question jurisdiction, García also asserts violations of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 under that Act, 17 C.F.R. § 240.10b-5, against the "President and Director of Simple Factory," Jorge E. Rodríguez (Rodríguez), and two of its officers, Margarita Hopgood, and José Raúl Rodríguez, all of whom are Puerto Rico residents.

Because the defendants seek to enforce a forum-selection clause, the analysis is procedurally controlled by Federal Rule of Civil Procedure 12(b)(6), <u>Claudio-De León v. Sistema Universitario Ana G. Méndez</u>, --- F.3d ----, 2014 WL 7269767, at *2 (1st Cir. Dec. 22, 2014),[1] and the relevant facts are therefore drawn from the complaint and the document therein "incorporated by reference." <u>Rivera-Díaz v. Humana Ins. of P.R., Inc.</u>, 748 F.3d 387, 388 (1st Cir. 2014).

The parties executed a Memorandum of Understanding (MOU), on October 20, 2011, whereby all agreed that, subject "to the execution of certain stock transfer agreements and joinder to stockholders agreements," Docket # 46-1, p. 1, García would be given a 17% stake in Simple Factory's common voting stock. <u>Id.</u>; Docket # 1-9, p. 1 ("<u>Pursuant</u> to the MOU, Mr. García was granted a 17% equity stake in the Corporation.") (emphasis added). As particularly relevant to this case, the MOU contains the following forum-selection clause: "the Court of First Instance of Puerto Rico, Superior Court of San Juan, shall be the exclusive venue for disputes pertaining to this MOU." Docket # 46-1, p. 4.

According to the complaint, the defendants henceforth treated García as a shareholder: Simple Factory, for instance, made two dividend payments to García for the first two quarters of 2012. Docket # 1, ¶ 32. Then, on October 29, 2012, Rodríguez sent an email explaining that, although Simple Factory had been considering selling its Gustazos shares, García was "not interested" in selling his. <u>Id.</u> at ¶¶ 23-24. During that time frame, Rodríguez, supposedly in

---

[1]<u>But</u> <u>see</u> <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211, 216 (2d Cir. 2014) (noting that <u>Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas</u>, 134 S. Ct. 568 (2013) ("<u>Atlantic Marine</u>") "held that generally 'the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens,' rather than Rule 12(b)." (quoting <u>Atlantic Marine</u>, 134 S. Ct. at 580)); <u>Pappas v. Kerzner Int'l Bahamas Ltd.</u>, 585 F. App'x 962, 964 (11th Cir. 2014) (noting that <u>Atlantic Marine</u> "declared that a motion to dismiss for forum non conveniens . . . is the appropriate means to enforce a valid forum-selection clause if that clause requires the dispute to be litigated in a non-federal forum") (footnote omitted).

cahoots with the other individual defendants, allegedly told García that Gustazos had offered to pay $40 for each of Gustazos's shares held by Simple Factory, but in December, 2012, García allegedly discovered that Gustazos had instead offered to pay $50 a share. Id. at ¶¶ 35-37.

Rodríguez sent another email on November 6, 2012, in which he told Simple Factory's shareholders, "including García, that they would become shareholders in Gustazos in their personal and official capacities." Id. at ¶ 25. That same day, the complaint alleges, Rodríguez said that "he would be holding a conference call with Gustazos'[s] legal counsel regarding the preparation of the respective documentation and the formal issuance of Gustazos'[s] stock to Simple Factory's shareholders, including García." Id.

But, according to the complaint, "the process to transfer Simple Factory's stock in Gustazos" never materialized, at least concerning García. Id. at ¶ 27. Things unraveled, and on December 18, 2012, Simple Factory's counsel informed García that, although the MOU had "summarized" the "possibility" of including him as a shareholder, that was no longer the case. Id. at ¶ 29. Because of García's alleged noncompliance with certain "considerations and actions," id., he explained, Simple Factory notified García that he was not a shareholder. Id. ¶ 30. Assuming the MOU had "any binding effect," the explanation went, "the corporate documents mentioned in the MOU" were never executed. Id. (citation and internal quotation marks omitted).

This suit followed shortly thereafter. Docket # 1. García's complaint contains six counts, five of which are grounded on Puerto Rico law: (1) a declaratory-judgment request, 28 U.S.C. § 2201(a), "recognizing" García's alleged 17% equity stake in Simple Factory, and a concomitant request to have the defendants transfer "8,245 shares of Gustazos" to García, and issue "García's stock certificates," Docket # 1, ¶¶ 40, 40-47; (2) breach of fiduciary duty, P.R. Laws Ann. tit. 14, § 3563, concerning the individual defendants' denial of García's alleged stake in Simple Factory, and for "failing to maximize shareholder value in the corporation,"

Docket # 1, ¶¶ 54-56; (3) "disgorgement of dividend distributions," and a request to prohibit the individual defendants from "disgorg[ing] any illegal dividend payments . . . after June 2012[,] which excluded García's pro-rata share," id. at ¶¶ 57-59; (4) breach of contract, P.R. Laws Ann. tit. 31, §§ 2994, 3018, for the defendants' noncompliance with Simple Factory's alleged "binding corporate resolution" distributing "its equity interest in Gustazos to its shareholders," Docket # 1, ¶ 60; and (5) damages, attorney's fees, and expenses concerning the alleged breach of contract. Id. at ¶ 62.

Last, but certainly not least, García musters a federal-law claim under section 10(b) of the Securities and Exchange Act , 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b, which furnishes a private right of action to sue for damages suffered for making false statements or omissions in connection with the purchase or sale of any security. The nub of his securities fraud claim is that the individual defendants "intended to deceive García into believing Gustazos had made an offer lower than the actual offer communicated by Gustazos'[s] management," Docket # 1, ¶ 49, claiming he relied on that misrepresentation "to reject" Gustazos's offer to buy his Simple Factory shares Id. at ¶ 51.

After several procedural nuances, the defendants (except for José Raúl Rodríguez) moved, incorrectly, under Federal Rule of Civil Procedure 12(b)(3) to enforce the MOU's forum-selection clause, contending that, because García's claims revolved around the purported breach of the MOU, they fell under the scope of its forum-selection clause. Dockets ## 19, 20. The Court denied those motions without prejudice, holding that they "improperly conflate[d] questions of venue with the enforcement of forum-selection clauses," Docket # 31, p. 1, and criticizing their lack of developed analysis. Id. at 2.

In due course, Simple Factory, Rodríguez, and Hopgood, renewed their request to enforce the MOU's forum-selection clause. Dockets ## 46, 47. García timely opposed, mounting two contentions: first, he says that because this court has exclusive jurisdiction over

his federal-law claim, it cannot be brought in local court, Docket # 49, p. 3; second, he maintains that none of the local-law claims is "based on the provisions of the MOU." Id. at 2.

Meanwhile, on February 26, 2014,  García was directed to show cause why his claims against codefendant José Raúl Rodríguez should not be dismissed for want of service of process, Docket # 34, as the service deadline had expired on May 31, 2013, Docket # 1, yet he never moved for an extension of time to effect service. He timely showed cause, positing that, although he attempted to personally serve this codefendant, "no further efforts were made" after the other codefendants moved to enforce the forum-selection clause. Docket # 37, p. 6. Finding those reasons "unpersuasive," Docket # 40, the Court ruled that García had failed to show good cause, and thus entered partial judgment dismissing those claims without prejudice. Docket # 41. García now moves for reconsideration. Docket # 45.

**Standard of Review**

The Supreme Court has made clear that forum-selection clauses "are prima facie valid," M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972), and thus they "carr[y] a  strong presumption of enforceability." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 18 (1st Cir. 2009). Another well-trodden principle dictates that the party resisting a forum-selection clause's enforcement "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 582 (2013). "The applicability of a forum selection clause does not depend on the nature of the underlying action," Rivera, 575 F.3d at 19, and "it is the language of the forum selection clause itself that determines which claims fall within its scope." Id.

A motion for reconsideration, for its part, is warranted when "the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." Global Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007). But a motion for reconsideration "is not the venue to undo procedural snafus or permit

a party to advance arguments it should have developed prior to judgment, nor is it a mechanism to regurgitate old arguments previously considered and rejected." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (internal citations and quotation marks omitted).

### Applicable Law and Analysis

*The Forum-Selection Clause*

Here, as said, García resists the application of the MOU's forum-selection clause, although he argues neither that the MOU's forum-selection clause is invalid (after all, he signed the MOU, Docket # 46-1, p. 5), nor that its enforcement would be unreasonable, as he advances none of the four grounds—the so-called Bremen factors—for finding a forum-selection clause unenforceable. See Huffington v. T.C. Group, Inc., 637 F.3d 18, 23 (1st Cir. 2011) (Boudin, J.) (construing and discussing Bremen factors). Nor does he contend, for he cannot, that the forum-selection clause is permissive, rather than mandatory, see Rivera, 575 F.3d at 16-17 (describing differences between mandatory and permissive forum-selection clauses), so the Court assumes its mandatory nature. And because Puerto Rico follows the federal standard enunciated in Bremen, Rafael Rodríguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 92 (1st Cir. 2010) (Boudin, J.) (citation omitted), the Court sidesteps the issue whether, for Erie purposes, a forum-selection clause "is enforceable as 'procedural' and look to a federal test of validity or instead treat it as 'substantive' and look to pertinent state law . . . ." Id.

The crux of the plaintiff's argument is that all of his claims fall outside the forum-selection clause's scope, positing that the complaint's allegations "are not based on the provisions of the MOU." Docket # 49, p. 2. The analysis thus begins and ends with the coverage question, as the critical dispute is whether the clause covers the claims set forth in García's complaint. And because this "is a clause-specific analysis, . . .'it is the language of the forum selection clause itself that determines which claims fall within its scope.'" Claudio-De León, 2014 WL 7269767, at *3 (quoting Rivera, 575 F.3d at 19). As detailed above, the MOU's

forum-selection clause says that "the Court of First Instance of Puerto Rico, Superior Court of San Juan, <u>shall</u> be the exclusive venue for disputes <u>pertaining to</u> this MOU." Docket # 46-1, p. 4 (emphases added).

That determination thus boils down to which (if any) claim "pertains to" the MOU. Of course, the verb "pertains" means "to relate to; to concern," <u>Black's Law Dictionary</u> 1260 (9th ed. 2009), entailing a broader language than, say, "arising under," <u>see</u> <u>Strata Heights Int'l Corp. v. Petroleo Brasileiro, S.A.</u>, 67 F. App'x 247, 2003 WL 21145663, at *5 (5th Cir. Apr. 28, 2003) (unpublished) ("The district court determined that Strata's claims did not arise under the MOU, and thus declined to dismiss the suit. The forum selection clause, however, also applies to claims <u>related to the MOU</u>.") (emphasis added); <u>Huffington</u>, 637 F.3d at 22-23 (discussing crucial differences between forum-selection clauses with "embracing language,"—e.g. "with respect to," "with reference to," "relating to," "in connection with," and "associated— which "have usually been construed broadly," and clauses with terms like "to enforce" or "arising out of," which necessitate a "narrower focus").[2] So the MOU's forum-selection clause is broadly worded. <u>Cf.</u> <u>Supply Co. v. Mitsubishi Caterpillar Forklift Am.</u>, 822 F.Supp.2d 896, 912-13 (D.Minn. 2011) (finding that forum-selection clause that encompasses actions "pertaining to" the contract also covers a tortious-interference claim). And forum-selection clauses containing "embracing language," the First Circuit has remarked, "are common and have usually been construed broadly." <u>Huffington</u>, 637 F.3d at 23.

So viewed, the MOU's forum-selection clause plainly encompasses all of García's claims under Puerto Rico law. To begin with, the cause of action for a declaratory-judgment request recognizing García's alleged 17% equity stake in Simple Factory doubtlessly relates to the

_____

[2]<u>Accord</u> <u>United States v. Stults</u>, 575 F.3d 834, 846 (8th Cir. 2009); <u>DesignSense, Inc. v. MRIGlobal</u>, No. 4:13-010, 2013 WL 3205569, at *2 (W.D. Mo. June 25, 2013); <u>United States v. Dillard</u>, No. 11-1098, 2013 WL 74316, at *2 (D. Kan. Jan. 7, 2013); <u>Daneshvar v. Graphic Tech., Inc.</u>, No. 97-2304, 1998 WL 726091, at *2 (D. Kan. Oct. 9, 1998).

MOU, because that claim is "'connected [to the MOU] by reason of an established or discoverable relation.'" Id. at 22 (quoting Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (Sotomayor, J.)). This is because García's January 11, 2013 letter, which he attached to the complaint, unambiguously says that "[p]ursuant to the MOU, Mr. García was granted a 17% equity stake in the Corporation." Docket # 1-9, p. 1. The MOU therefore has a significant relationship to this claim. Indeed, the MOU is where the defendants explicitly agreed, among other things, to "draft Joinder Agreements" to include García as a stockholder, and to draft a "Reinstated and Amended Stockholders Agreement . . . to reflect the changes contemplated" therein. Docket # 46-1, p. 1. Yet none of those "corporate documents," the complaint itself alleges, Docket # 1, ¶ 30, were ever executed; in fact, the complaint even recognizes that such lack of execution was a reason mustered by the defendants to justify denying García shareholder status. Id. And that defense also suffices to establish a connection between the parties' dispute and the MOU. See John Wyeth & Bro. Ltd. v. CIGNA Intl Corp., 119 F.3d 1070, 1076 & n. 5 (3d Cir. 1997) (Alito, J.) (finding that a "'defense' based on a contract that contains a forum selection clause," which "is broadly worded, extending to any dispute 'arising . . . in relation to,' "encompasses a dispute in which [an agreement] is raised as a defense"). It cannot be said, then, that the MOU is not related to the gist of García's complaint — namely, "enforc[ing] his rights" as Simple Factory's shareholder. Docket # 1, ¶ 11.

By parity of reasoning, the same holds true for García's breach-of-fiduciary-duty claim, for it concerns the individual defendants' denial of García's alleged equity stake, which, for the reasons just given, pertains to the MOU. In all events, that claim obviously depends on García's shareholder status, see, e.g., CarrAmerica Realty Corp. v. Kaidanow, 331 F.3d 999, 1000 (D.C. Cir. 2003) (per curiam), which in turn relates to the MOU. The MOU similarly has a connection with the claim for "disgorgement of dividend distributions," because García's compensation was governed by, and therefore relates to, a clause in the MOU. See Docket # 46-1, p. 3

(providing that Simple Factory's board of directors "may elect to assign salary, benefits and other forms of compensation" to García).

Nor can García shoulder his burden of persuading that his breach-of-contract claim does not pertain to the MOU. True, García centers that claim on the defendants' noncompliance with a "binding corporate resolution" regarding the distribution of Simple Factory's "equity interest in Gustazos to its shareholders." Docket # 1, ¶ 60 (citing email to that effect). But, again, that dispute involves the antecedent issue—the heart of this action—whether the MOU in effect granted García a "17% equity stake in the Corporation," Docket # 1-9, p. 1, and whether García is a shareholder, as he so maintains. As Judge Posner once remarked, construing a similarly broad clause, "the forum selection clause does not apply just to the litigation of <u>claims</u> that . . . concern . . .  the contract; it applies to the litigation of <u>disputes</u> that . . . concern . . . the contract." <u>Abbott Labs. v. Takeda Pharm Co.</u>, 476 F.3d 421, 424 (7th Cir. 2007) (emphasis in original); <u>accord</u> <u>Rivera</u>, 575 F.3d at 19 ("The applicability of a forum selection clause does not depend on the nature of the underlying action."). That García says he is a shareholder, Docket # 49, p. 8, does not make  him so, of course, absent a judicial determination to that effect. <u>See generally</u>, <u>e.g.</u>, <u>Speca v. C. I. R.</u>, 630 F.2d 554, 560 (7th Cir. 1980) ("However, such an argument assumes appellants' shareholder status. That status is precisely the issue litigated below."). So the contract claim has a connection with the MOU, and "[s]trategic or artfully drawn pleadings . . . will not work to circumvent an otherwise applicable forum selection." <u>Terra Int'l, Inc. v. Mississippi Chem. Corp.</u>, 119 F.3d 688, 695 (8th Cir. 1997). The same holds true, without serious question, for the contract-related tort claim. <u>E.g.</u>, <u>Lambert v. Kysar</u>, 983 F.2d 1110, 1121 (1st Cir. 1993) (holding that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract" fall within the scope of a forum-selection clause); <u>Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.</u>, 986 F.2d 607, 609-10 (1st Cir.1993).

The plaintiff resists this conclusion. The MOU's forum-selection clause, goes the argument, governs only "disputes pertaining to [García's] integration as a stockholder, the preparation of the corporate documents to demonstrate such integration and his duties within and on behalf of Simple Factory as a stockholder." Docket # 49, p. 6. The untenability of that argument is plain, however, because it presupposes, id. at 6-9, that the MOU's forum-selection clause is narrow. See also id. at 8 (arguing that if this action centered "on how the stocks were to be distributed or any controversies pertaining to [García's] inclusion as a stockholder, then, the forum selection clause would be enforceable[,] since the controversy would arise from the provisions of the MOU") (emphasis added). But, for the reasons stated above, it is not; it is capacious. So the premise on which García's argument rests is faulty.

The Court is similarly unmoved by García's invocation of Phillips v. Audio Active Ltd., in which the Second Circuit declined to enforce a forum-selection clause, reasoning that a plaintiffs' copyright claims did not "originate from, and therefore 'arise out of,' the contract." 494 F.3d 378, 391 (2d Cir. 2007). But this case stands in a entirely different posture; the phrase "pertains to" is, as elucidated, see note 2 above and accompanying discussion, "broader in scope than the term 'arising out of,' to be broader than the concept of a causal connection, and to mean simply 'connected by reason of an established or discoverable relation.'" Huffington, 637 F.3d at 22 (quoting Coregis Ins. Co., 241 F.3d at 128-29). For this reason, the case at hand is also readily distinguishable from Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A., in which the Second Circuit extended  Phillips to a forum-selection clause containing the language "'resulting from,'" 572 F.3d 86, 91 (2d Cir. 2009), because that court equated that term with "'arising out of.'" Id. García simply ignores that crucial distinction. (Unfortunately and surprisingly, so do the defendants.) That critical distinction suffices to spell doom for García's argument. The above claims are therefore dismissed without prejudice to their being refiled "in the appropriate forum." Claudio-De León, 2014 WL 7269767, at *5.

The effect of the forum-selection clause on García's claims for violations of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 under that Act, 17 C.F.R. § 240.10b-5, presents a more difficult question. See, e.g., Bonny v. Soc'y of Lloyd's, 3 F.3d 156, 160 (7th Cir. 1993) (expressing "serious concerns that" forum-selection clause can "operate as a prospective waiver of statutory remedies for securities violations"). The defendants also fail to grapple with this issue, "exemplif[ying] the difficult cases that District Court judges constantly face. The nature, essence, and value of evidence and the presentation of legal arguments from both parties leave enormous lagoons." Municipio Autónomo de Ponce v. U.S. Office of Mgmt. & Budget, No. 14-1502, 2014 WL 4180767, at *1 (D.P.R. Aug. 12, 2014) (Fuste, J.), reconsideration denied, 2014 WL 4639896 (D.P.R. Sept. 16, 2014).

But because "[t]he simplest way to decide a case is often the best," Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 248 (1st Cir. 2013) (quoting Chambers v. Bowersox, 157 F.3d 560, 564 n.4 (8th Cir.1998) (R. Arnold, J.)), and because it appears that this claim is "foreclosed by prior decisions of . . .[the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be  the ultimate resolution of the federal issues on the merits," Oneida Indian Nation of N. Y. State v. Oneida Cnty., New York, 414 U.S. 661, 666-67 (1974), the Court sidesteps that question, and instead orders García to show cause why this claim should not be dismissed for lack of statutory standing, and, consequently, for want of subject-matter jurisdiction. See Donahue v. City of Boston, 304 F.3d 110, 119 (1st Cir. 2002) (where lack of standing is "presented with such clarity, dismissal for lack of subject-matter is justified."); see also, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998).

One need not tarry. The short of it is that, in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975), the Court "construed the Act's 'purchase or sale' language to mean that only 'actual purchasers and sellers of securities' have standing to bring a private action for

damages." Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc., 532 U.S. 588, 594 (2001)

(quoting Blue Chip Stamps, 421 U.S. at 730-731); Chadbourne & Parke LLP v. Troice, 134 S.

Ct. 1058, 1063 (2014) (construing Blue Chip Stamps as extending private right of action "only

to purchasers and sellers, not to holders, of securities") (emphasis added); Merrill Lynch, Pierce,

Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 80 (2006); accord, e.g., Milton v. Van Dorn Co., 961

F.2d 965, 968 n. 4 (1st Cir. 1992). Yet García neither purchased nor sold the securities involved

in the disputed transaction — namely, his alleged 17% equity stake in Simple Factory;

according to the complaint, he instead relied on the alleged misrepresentation "to reject"

Gustazos's approach to buy his Simple Factory shares. Docket # 1, ¶ 51. And that omission

proves fatal. See Marsh v. Armada Corp., 533 F.2d 978, 981 (6th Cir. 1976) (holding that

shareholders who retained their shares rather than sell or tender them during merger negotiations

lacked standing to sue given Blue Chip Stamps); cf. Wharf (Holdings) Ltd., 532 U.S. at 594

(noting that Blue Chip Stamps held that "the Act does not protect a person who did not actually

buy securities, but who might have done so had  the seller told the truth").

It appearing, therefore, that García has pleaded himself out of federal court, García has

some explaining to do. See Watchtower Bible & Tract Soc'y of New York, Inc. v. Municipality

of San Juan, 773 F.3d 1, 13 (1st Cir. 2014) (reminding that "[s]ua sponte dismissals, which by

definition are entered on the court's own initiative and without advance notice or an opportunity

to be heard, are disfavored"). The upshot is that the Court holds in abeyance the request to

enforce the MOU's forum-selection clause as to the securities fraud claim, pending resolution

of this threshold issue. See AVC Nederland B.V. v. Atrium Inv. P'ship, 740 F.2d 148, 152-55

(2d Cir. 1984) (Friendly, J.) (evaluating existence of subject-matter jurisdiction under the

Securities Exchange Act before discussing applicability of forum-selection clause); see also,

e.g., Berner v. Delahanty, 129 F.3d 20, 23 (1st Cir.1997) (noting "the general rule . . . that a

court should first confirm the existence of rudiments such as jurisdiction and standing before

tackling the merits of a controverted case"). By **February 11, 2015**, García shall show cause why his securities fraud claim should not be dismissed for lack of jurisdiction.

>    *II. The motion for reconsideration*

One last task remains: García seeks reconsideration from the order, Docket # 40, dismissing his claims against José Raúl Rodríguez for want of service of process. Docket # 45. Of course, interlocutory orders like the one García seeks reconsideration from, "remain open to trial court reconsideration until the entry of judgment." Nieves-Luciano v. Hernández-Torres, 397 F.3d 1, 4 (1st Cir. 2005) (citations and internal quotation marks omitted). But García falls miles short of shouldering his burden of persuading that the Court erred in dismissing those claims.

This matter requires little discussion. Rule 4(m) mandates dismissal "if service is not made within 120 days of the filing of the complaint unless the plaintiff shows 'good cause' for the failure." Burke v. City of Boston, 201 F.3d 426 (1st Cir. 1999). García, quite simply, has not met his burden, De-La-Cruz-Arroyo v. Comm'r of Soc. Sec., 215 F.3d 1311 (1st Cir. 1998) (per curiam), of showing "good cause" to compel an extension of the service deadline. As a threshold matter, he never requested (as he should have) an extension before the expiration of the 120-day deadline: May 31, 2013; it was not until the Court ordered him to show cause that he first informed, 270 days upon the service deadline's expiration, of the alleged unfeasibility of effecting personal service on that codefedant. (In that same motion, García requested leave for service by publication, but neglected to even furnish a proposed order to that effect.) That glaring omission, coupled with such excessive delay, weighs heavily against the plaintiff. See Nafziger v. McDermott Intern., Inc., 467 F.3d 514 (6th Cir. 2006); King v. Jefferies, 402 F. Supp. 2d 624 (M.D. N.C. 2005); Padilla Cintrón v. Rosselló González, 247 F. Supp. 2d 48, 61 (D.P.R. 2003); Hill v. Rhodes Furniture, 194 F.R.D. 604 (S.D. Ohio 1999), judgment aff'd, 39 Fed. Appx. 246 (6th Cir. 2002).

If more were needed, the main reason given by García to justify his having made "no further efforts" to serve this codefendant—that the other codefendants had moved to enforce the MOU's forum-selection clause, Docket # 37, p. 6—is wholly unpersuasive. The pendency of the forum-selection clause's enforcement, the Court hereby reiterates, "does not justify the plaintiff's calculated choice" to sit idle. Docket # 40. So García "[m]ust be bound by the consequences of [his] litigation strategy." Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008) (citation omitted). And even assuming, dubitante, the alleged lack of prejudice to this codefendant—a relevant consideration, Benjamin v. Grosnick, 999 F.2d 590, 592 (1st Cir. 1993)—that factor is nonetheless outweighed by the plaintiff's lackadaisical approach to service. "The lesson to be derived is that '[t]he law ministers to the vigilant not to those who sleep upon perceptible rights.'" In re Efron, 746 F.3d 30, 32 (1st Cir. 2014) (alteration in original) (quoting Puleio v. Vose, 830 F.2d 1197, 1203 (1st Cir.1987)). This ends the matter.

### Conclusion

For the reasons stated, the defendants' motions to enforce the forum-selection clause are **GRANTED**, so all the local-law claims are **DISMISSED without prejudice**. But their request to dismiss the securities fraud claim is **HELD IN ABEYANCE** pending the plaintiff's show-cause response on this front. The plaintiff's motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of January, 2015.

                                       *s/ Salvador E. Casellas*
                                       SALVADOR E. CASELLAS
                                       U.S. Senior District Judge